UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANCES CONSETTA
RANDALL,

                    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

Case No. 4:20-cv-12144
District Judge Matthew F. Leitman
Magistrate Judge Anthony P. Patti

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT IN PART and DENY IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 15), GRANT IN PART and DENY IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 16), and REMAND THIS MATTER TO THE COMMISSIONER**

**I.  RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT IN PART and DENY IN PART**

Plaintiff's motion for summary judgment (ECF No. 15), **GRANT IN PART and**

**DENY IN PART** Defendant's motion for summary judgment (ECF No. 16), and

**REMAND** this matter to the Commissioner for action consistent with this report.

**II.  REPORT**

      Plaintiff, Frances Consetta Randall, brings this action under 42 U.S.C. §§

405(g) and/or 1383(c)(3) for review of a final decision of the Commissioner of

Social Security (Commissioner) denying her application for disability insurance

(DI) benefits.  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (ECF

No. 15), the Commissioner's cross-motion for summary judgment (ECF No. 16),

and the administrative record (ECF No. 12).

### A.      Background and Administrative History

Plaintiff alleges her disability began on September 5, 2015, at the age of 53.

(ECF No. 12, PageID.246.)  Plaintiff filed the DI application at issue in the instant

appeal on February 27, 2017.  (*Id*., PageID.246.)  In her disability report, she lists

several conditions (depression, anxiety, post-traumatic stress disorder (PTSD),

right shoulder rotator cuff tear, and right side of jaw and neck injury) as limiting

her ability to work.  (*Id*., PageID.307.)  Her application was denied on September

27, 2017.  (*Id*., PageID.115-131; *see also id*., PageID.135-151.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (*Id*.,

PageID.152-153.)  On April 10, 2019, ALJ Carrie Kerber held a hearing, at which

Plaintiff and a vocational expert (VE), Charles H. McBee, testified.  (*Id*.,

PageID.83-113, 228, 515-518.)  On May 23, 2019, ALJ Kerber issued an opinion,

which determined that Plaintiff was not disabled within the meaning of the Social

Security Act.  (*Id*., PageID.56-81.)

Plaintiff submitted a request for review of the hearing decision/order.  (*Id*.,

PageID.241-244.)  However, on June 11, 2020, the Appeals Council denied

Plaintiff's request for review.  (*Id.*, PageID.45-50.)  Thus, ALJ Kerber's decision

became the Commissioner's final decision.  Plaintiff timely commenced the instant

action on August 11, 2020.  (ECF No. 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 1,247 pages of medical

records, which were available to the ALJ at the time of her May 23, 2019 decision.

(ECF No. 12, PageID.81, 534-1789 [Exhibits 1F-28F].)  These materials will be

discussed in detail, as necessary, below.

### C.    The March 18, 2020 Administrative Decision

Pursuant to 20 C.F.R. § 416.920(a)(4), at **Step 1** of the sequential evaluation

process, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since September 5, 2015, the alleged onset date (AOD).  (ECF No. 12, PageID.62.)

At **Step 2**, the ALJ found that Plaintiff had the severe impairments of osteoarthritis

of the right shoulder, status post rotator cuff repair surgery, and cervicalgia.  (*Id.*,

PageID.62-64.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment

or combination of impairments that met or medically equaled the severity of one of

the listed impairments.  (*Id.*, PageID.64-65.)  **Between Steps 3 and 4** of the

sequential process, the ALJ evaluated Plaintiff's residual functional capacity

(RFC)[1] and determined that Plaintiff had the RFC "to perform light work . . . [*i.e., exertional limitation*] [,] except no overhead reaching on the right [*i.e., manipulative limitation*]; no crawling; no climbing ladders, ropes, or scaffolds [*i.e., postural limitations*]." (*Id.*, PageID.65-74.) At **Step 4**, the ALJ determined that Plaintiff was "capable of performing past relevant work as an Art Director . . . ." (*Id.*, PageID.74.) Then, without the need to proceed to **Step 5**, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 5, 2015, through the date of the decision. (*Id.*, PageID.74.)

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the

merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651

(quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.   Analysis

Plaintiff contends that the ALJ erred in her treatment of: (1) the opinion

evidence; (2) the severity of Plaintiff's impairments at Step 2; and, (3) the RFC.

(ECF NO. 15, PageID.1796, 1802-1820.)  I will address these arguments as they

occur within the five-step analysis.

#### 1.   Step 2

##### a.   TMJ and mental impairments

Plaintiff argues that her TMJ ("temporomandibular joint") and mental

impairments – namely, depression and anxiety – "met the *de minimis* hurdle and

should have been found severe . . . [,]" because "they resulted in more than a

minimal effect on Plaintiff's ability to perform work." (ECF No. 15,

PageID.1814.)  "[T]he step two severity regulation codified at 20 C.F.R. §§

404.1520(c) and 404.1521 has been construed as a *de minimis* hurdle in the

disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.

1988) (citing cases).  "[T]he second stage severity inquiry, properly interpreted,

serves the goal of administrative efficiency by allowing the Secretary to screen out

totally groundless claims." *Farris v. Sec'y of Health & Hum. Servs*., 773 F.2d 85,

89 (6th Cir. 1985).  For these reasons, "The fact that some of [the plaintiff's]

impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).

At Step 2, the ALJ acknowledged Plaintiff's "mild degenerative changes in the osseous structures of the left TMJ," but explained, "physicians have not opined any limitations caused by th[is] condition[]." (ECF No. 12, PageID.62; *see also id.*, PageID.66.) Also, the ALJ acknowledged Plaintiff's mental impairments of depression, anxiety, and PTSD, but noted Plaintiff's testimony that "she was not taking any medications for these impairments and the record supports that the claimant's mood was routinely noted as stable/improved and she intermittently stopped taking her medications." (*Id.*, PageID.62 (citing ECF No. 12, PageID.929, 1316, 1319, 1322).) Moreover, when finding that Plaintiff has mild limitations in concentration, persistence, or maintenance of pace (CPP), the ALJ observed, *inter alia*, that "treatment notes indicate that her struggles with concentration were related to her anxiety." (*Id.*, PageID.63.) Additionally, after concluding that Plaintiff had no more or greater than mild limitations or restrictions in each of the functional areas, the ALJ assigned "partial weight" to the July 2017 opinions of state agency psychological consultant Dyan Hampton-Aytch, Ph.D., who determined that Plaintiff had mild limitations in most of the functional areas but moderate limitations with respect to CPP (*id.*, PageID.122). (*Id.*, PageID.63-64; *see also id.*, PageID.125-127.) The ALJ explained: "the evidence *does not*

7

*support* that the claimant has more than a mild limitation in concentration, persistence, or pace as she reported that she stopped taking her medications due to weight gain, she did not continue treatment in counseling, and for the reasons discussed above." (*Id*., PageID.64 (emphasis added) (citing *id*., PageID.929, 1316, and hearing testimony).) Thus, the ALJ provided explanations for her Step 2 conclusions that Plaintiff's TMJ, depression and anxiety were not severe.

### b.   Harmless error

Nevertheless, even if Plaintiff's TMJ and mental impairments "met the *de minimis* hurdle" and should have been found severe, because "they resulted in more than a minimal effect on Plaintiff's ability to perform work[,]" (ECF No. 15, PageID.1814), it is not, on its own, reversible error. "Since the Secretary properly could consider claimant's [TMJ and mental impairments] in determining whether claimant retained sufficient residual functional capacity to allow [her] to perform substantial gainful activity, the Secretary's failure to find that claimant's [TMJ and mental impairments] constituted a severe impairment could not constitute reversible error." *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In other words, an error at Step 2 "is harmless as long as the ALJ found at least one severe impairment and continued the sequential analysis and ultimately addressed all of the claimant's impairments in determining her residual functional capacity." *Swartz v. Barnhart*, 188 F. App'x 361, 368 (6th Cir. 2006).

*See also* SSR 96-8P, 1996 WL 374184, *5 (S.S.A. July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

In sum, the ALJ considered TMJ, anxiety and depression within the RFC determination (ECF No. 12, PageID.66-67, 72-73), and, while Plaintiff suggests error in the ALJ's treatment of her TMJ, anxiety and depression at Step 2 (*see* ECF No. 15, PageID.1812-1814), Plaintiff must still illustrate how the RFC, with its exertional limitation to light work and various manipulative and postural limitations, fails to accommodate Plaintiff's TMJ, anxiety and depression.

### 2. Opinion evidence

Plaintiff challenges the ALJ's consideration of the opinion evidence. (ECF No. 15, PageID.1803-1812.) *See* 20 § CFR 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017."). The ALJ expressly considered several pieces of opinion evidence and assigned:

- partial weight to the July 2017 opinions of state agency psychological consultant Dyan Hampton-Aytch, Ph.D. (ECF No. 12, PageID.64, 122-123, 125-127; *see also id*., PageID.72);

- little weight to the September 5, 2015 opinion of David Rustom, M.D. of Concentra Medical Center (*id*., PageID.66-67, 668-672, 692-695);

- partial weight to the September 2015 opinion of treating physician Calder Conner, M.D. (*id*., PageID.67, 615-617);

- little weight to the January 2016 opinion of Jeffrey Lawley, D.O., an orthopedic surgeon (*id.*, PageID.68, 717-718, 726);

- partial weight to the January 2016 and March 2016 opinions of "orthopedic shoulder specialist" Jason Holcomb, M.D. (*id.*, PageID.68, 826-830, 1082-1085);

- great weight to the August 2017 opinion of consultative examiner Tanvir I. Qureshi, M.D. (*id.*, PageID.71, 1270-1277);

- little weight to the September 2017 opinion of state agency medical consultant Gerald Klyop, MD. (*id.*, PageID.72, 124-125);

- little weight to the February 5, 2017 psychological evaluation of Elizabeth Mitchell / Thomas S. Rosenbaum, Ph.D. (*id.*, PageID.72, 975-988);

- little weight to the October 2018 opinion of "treating source" Christina Lucas, D.O. (*id.*, PageID.72, 1508-1511);

- little weight to the January 2017 opinion of Neil Patel, M.D., an independent peer reviewer (*id.*, PageID.73, 1010)

- little weight to the May 8, 2017 opinion of Katherine Easton, Plaintiff's sister (*id.*, PageID.73, 329-336).

(ECF No. 12, PageID.64, 67-68, 71-73.)  In this appeal, Plaintiff points to the

ALJ's treatment of the Conner and Lucas opinions.  (ECF No.15, PageID.1803-

1804.)

### a.    Calder Connor, M.D.

Plaintiff treated with Dr. Connor of Concentra Medical Center from at least

September 8, 2015 to September 30, 2015.  (*See* ECF No. 12, PageID.559-691,

10

833, 1087.)  On September 30, 2015, Dr. Connor noted, *inter alia*, "may lift up to

10 [pounds] occasionally," "may push/pull up to 10 [pounds] occasionally," and

"no reaching above shoulders with affected extremity(s)."  (*Id*., PageID.615-617.)

With respect to this opinion, the ALJ explained:

> The undersigned assigns partial weight to the opinion of Dr. Conner
> and has accounted for the no overhead reaching limitation on the right
> within the adopted [RFC] assessment.  The record *does not support*
> that the claimant has such restrictive lifting/pushing/pulling
> limitations as more fully discussed herein and is capable of
> performing work at the light exertional level.

(ECF No. 12, PageID.67 (emphasis added).)

### b.    Christina Lucas-Vougiouklakis, D.O.

Plaintiff claims that Dr. Lucas has treated her since 2013 (ECF No. 15,

PageID.1811), although it seems the medical evidence of record's earliest notes

from Dr. Lucas of Rockwood Family Practice are dated January 21, 2015 and

extend to March 22, 2018 (ECF No. 12, PageID.901-971, 1515-1621) and again on

October 17, 2018 (*id*., PageID.1512-1514).  At this last visit, Dr. Lucas completed

a medical source statement (MSS), wherein she opined on Plaintiff's functional

limitations, including, pain/fatigue/sleepiness, work place stressors, and exertional

limitations.  (ECF No. 12, PageID.1508-1511.)  Dr. Lucas assessed exertional

limitations (including, *inter alia*, no lifting and no carrying), the option to shift

positions at will from sitting, standing, or walking, as well as the limitations that

Plaintiff could not hold her head in a downward position for extended periods of

time "such as is required to work at a bench" and could not extend her arms in a

forward position and position her head "such as to operate a computer or to

assemble small parts or package . . . ." (*Id.*)

Plaintiff characterizes Dr. Lucas's MSS as limiting Plaintiff to "a reduced

range of sedentary work . . . ." (ECF No. 15, PageID.1804.) Considering this

piece of evidence, the ALJ explained:

> The undersigned assigns little weight to the opinion of Dr. Lucas to
> the extent it is expressed in vocationally relevant terms as the doctor's
> opinion appears to rely in part on an assessment of an impairment(s)
> for which the claimant received no treatment from that doctor. The
> treatment notes of Dr. Locus [sic] focus upon the claimant's upper
> extremity neck and shoulder region and, as such, her opinion
> regarding the claimant's ability to sit/stand/walk, sit/stand option, rest
> breaks are *inconsistent with* other evidence of record[,] *nor does the*
> *evidence* support that the claimant has such restrictive lifting
> limitations. ([ECF No. 12, PageID.616-617, 672, 1163-1166, 1270-
> 1277, 1343-1345] and see hearing testimony[.])[2] . . .

(ECF No. 12, PageID.72-73 (emphases added).)

### c.    Restrictive lifting/pushing/pulling limitations

Plaintiff makes a few challenges to the ALJ's treatment of Dr. Lucas's

opinion, such as taking issue with the ALJ's characterization of Dr. Lucas's

treatment notes or the sufficiency of the ALJ's statement that Dr. Lucas's

limitations are "inconsistent with other evidence of record[.]" (ECF No. 15,

---

[2] The written decision cites "139," without reference to an exhibit (*see* ECF No.
12, PageID.73); I assume the reference is to Exhibit 1F/139 (*id.*, PageID.672), as
opposed to Exhibit 22F/139 (*id.*, PageID.1466).

PageID.1808; ECF No. 12, PageID.72-73.)  Yet, the most remarkable is Plaintiff's

challenge to the ALJ's statements that the restrictive lifting, pushing, and/or

pulling limitations assessed by Dr. Conner and Dr. Lucas, and perhaps even Dr.

Holcomb, are *not supported* by the record.  (*See* ECF No. 12, PageID.67, 68, 72-

73.)  *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents

relevant evidence to support a medical opinion, particularly medical signs and

laboratory findings, the more weight we will give that medical opinion."), 20

C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with

the record as a whole, the more weight we will give to that medical opinion.").

As to Dr. Conner, Plaintiff claims this "is plain wrong," and argues Dr.

Conner's opinion "was *consistent with* records from other sources . . . [,]" such as:

(i) Lance Chaldecott, M.D.'s January 26, 2016 recommendation to "obtain

evaluation by [a] shoulder specialist[,]" (*id.*, PageID.1080-1081); and, (ii) Dr.

Holcomb's January 26, 2016 opinion that "she may return to work with no lifting

more than 10 pounds and no reaching over chest level with the right arm[,]" (*id.*,

PageID.826-830).  (ECF No. 15, PageID.1805-1806 (emphasis added), 1811.)  As

Plaintiff puts it, the ALJ partially accepts Dr. Conner and Dr. Holcomb's opinions

and rejects the parts of these opinions "that would result in a finding of less than

light work."  (*Id.*, PageID.1806.)  As to Dr. Lucas, Plaintiff labels as "insufficient"

the ALJ's statement that the evidence does not support that Plaintiff has such

restrictive lifting limitations. (ECF No. 15, PageID.1808; ECF No. 12, PageID.72-73.) Plaintiff contends that Dr. Lucas's opinion "was based on her own treatment notes[,]" and that Dr. Lucas's opinion is supported by: (i) Keith R. Barbour, D.O.'s May 4, 2016 records, which note "a lot of problems," "a terrible, terrible shoulder with partial tears of most of the rotator cuff, fraying including the biceps tendon," and "a lot of neck and shoulder pain and TMJ problems," (*id*., PageID.997, 1163); (ii) Dr. Barbour's May 18, 2016 records, which note "a lot of cervical dysfunction," (*id*., PageID.1247); and, (iii) "extensive treatment," such as osteopathic manipulation and injections.[3] (ECF No. 15, PageID.1808, 1811.)

Plaintiff's challenge to the ALJ's consideration of the opinion evidence supportability and/or consistency factors, 20 C.F.R. §§ 404.1527(c)(3),(4), raises some questions. First, it is not clear whether a debate between the sedentary and light work exertional differences is material. *See* 20 C.F.R. §§ 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."), 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."). In Plaintiff's

---

[3] S*ee*, *e.g.*, *id*., PageID.1000, 1141, 1164, 1171, 1176, 1181, 1191, 1196, 1200, 1208, 1217, 1222, 1232, 1236, 1240, 1243, 1247, 1330, 1343, 1348, 1353, 1359, 1364, 1369, 1375, 1380, 1386, 1398, 1416, 1429, 1436, 1450, 1458, 1465, 1471, 1479, 1485, 1492.

case, the ALJ determined that Plaintiff was capable of work at the "light"

exertional level and also that Plaintiff was capable of performing her past relevant

work as an art director, DICOT 141.031-010 ("Art Director"), which is classified

as sedentary, but which the VE explained was "up to light *as performed*." (ECF

No. 12, PageID.65, 74, 108 (emphasis added).) Given that Plaintiff was 53 years

old at the time of her alleged AOD and 56 years old at the time of the ALJ's May

23, 2019 decision, I cannot help but wonder whether the grids come into play. *See*

20 C.F.R. Pt. 404, Subpt. P, App. 2.

Second, there are multiple opinions as to lifting, carrying, pushing and/or

pulling. As the Commissioner largely acknowledges: (i) Dr. Rustom assessed no

overhead lifting and no lifting more than 40 pounds (PageID.672); (ii) Dr. Conner

assessed lifting/pushing/pulling up to 10 pounds occasionally and no reaching

above shoulders with affected extremity(ies) (*id*., PageID.617-618); (iii) state

agency medical consultant Dr. Klyop opined that Plaintiff was capable of

occasionally lifting and/or carrying 50 pounds and frequently lifting and/or

carrying 25 pounds (*i.e.*, work at the medium exertional level) (*id*., PageID.124,

129); and, (iv) Dr. Holcomb opined that Plaintiff "may return to work with no

lifting more than 10 pounds and no reaching over chest level with the right arm[,]"

(*id*., PageID.828). (ECF No. 16, PageID.1829-1830, 1832, 1847). Moreover, I

note independent peer reviewer Dr. Patel's January 2017 proposal of a lifting

15

restriction and limitation to "20 pounds frequently and 35 pounds occasionally[,]" which also contains handwritten notes – perhaps by Dr. Barbour, although not clear – limiting Plaintiff to lifting 5 pounds occasionally to shoulder level, frequently to waist level, with no overhead work.  (*Id*., PageID.1010.)  Considering the ALJ's assignment of little weight to Dr. Rustom's, Dr. Klyop's, and Dr. Patel's opinions and partial weight to Dr. Conner's and Dr. Holcomb's opinions (ECF No. 12, PageID.67, 68, 72-73), the support that Plaintiff is able to lift and/or carry at the light exertional level is not clear – *i.e.*, it is only clear that the ALJ disagreed that Plaintiff could lift 40 or 50 pounds and believed there was evidence that Plaintiff could lift more than 10 pounds.  The August 2017 opinion to which the ALJ assigned "great weight" reflects that Plaintiff can perform exertional tasks, but does not remark on weight, and the musculoskeletal examination seems to have revealed limited range of motion in the right shoulder and cervical spine.  (ECF No. 12, PageID.1270, 1276.)

Finally, I am not persuaded by the Commissioner's argument that the ALJ's decision, "read as a whole, amply identified evidence that was inconsistent with lifting no more than 10 pounds, including other opinion evidence and physical examination findings reflecting Plaintiff's full muscle strength and tone[,]" (ECF No. 16, PageID.1834), which the Commissioner reports with a general, 7-page citation to the ALJ's opinion (ECF No. 12, PageID.66-72). And, it seems doubtful

that the ALJ's notation of September 2015 physical therapy notes, which reflect

performance of therapeutic activities involving carrying/pushing/pulling 10 pounds

(ECF No. 12, PageID.67, 542, 545), is by itself sufficient support for a light work

RFC.

In sum, even if the exertional differences between sedentary and light work

turns out to be immaterial, the ALJ's consideration of the supportability and/or

consistency factors does not make clear the evidence for the assessed "light work"

lifting restriction of "no more than 20 pounds at a time with frequent lifting or

carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

### 3.   RFC

Plaintiff argues that the ALJ failed "to consider all of Plaintiff's medically

determinable impairments and symptoms in assessing Plaintiff's [RFC]."  (ECF

No. 15, PageID.1814-1820.)  As to this argument, the Court need not ponder

whether "the ALJ did not account for Plaintiff's symptoms of chronic pain,"

because it certainly seems that "the ALJ inexplicably limited her evaluation of the

evidence to records dated before August 31, 2017." (*Id*., PageID.1814-1815.)

In Plaintiff's case, after addressing Steps 1 through 3 of the sequential

analysis (PageID.62-65), the ALJ proceeded to consider Plaintiff's RFC (*id*.,

PageID.65-44).  Near the end of her RFC discussion, the ALJ stated:  "[t]his is not

to say that the claimant was symptom free or did not experience difficulty

17

performing some tasks.  However, the objective evidence does not demonstrate the existence of limitations of such severity as to have precluded the claimant from performing all work on a regular and continuing basis at any time from the alleged onset date of disability *through August 31, 2017*."  (ECF No. 12, PageID.73 (emphasis added).)

The significance of August 31, 2017 is unclear, although the administrative record contains notes of that date from Dr. Lucas-Vougiouklakis.  (ECF No. 12, PageID.1576-1579.)  The Commissioner makes several observations about Plaintiff's related challenge, including:  (i) this is an otherwise undeveloped argument; (ii) Plaintiff's examples of evidence supporting pain do not post-date August 31, 2017 (*see* ECF No. 15, PageID.1818-1819); and, (iii) this is, perhaps, "a scrivener's error, since the ALJ found Plaintiff not disabled through the date of the decision[,]" *i.e.*, May 23, 2019.  (ECF No. 16, PageID.1846 n.3.)  Yet, even if Plaintiff did not robustly develop this argument, and even if Plaintiff did not cite evidence of pain post-dating August 31, 2017, the Court should decline to accept the ALJ's statement as "a scrivener's error."  It is simply unclear whether the ALJ carried out her charge to review the entire record, even though she alleged "careful consideration of the entire record," or, especially, "consideration [of] the entirety of the *medical* record[.]"  (ECF No. 12, PageID.61, 65, 73 (emphasis added).)  *See*

18

20 C.F.R. § 404.1520(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled.").

Preliminarily, I recognize that an ALJ is not required to expressly address each piece of evidence, *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-508 (6th Cir. 2006). Still, the medical evidence of record spans the period from January 21, 2015 to March 14, 2019 (ECF No. 12, PageID.41-43, 534-1789), and, as best I can tell, with the exception of the ALJ's citation to the October 2018 opinion of "treating source" Christina Lucas, D.O. (*id.*, PageID.72, 1508-1511), the ALJ's RFC discussion only expressly references medical records dated September 2015 to August 2017. (ECF No. 12, PageID.63-73.)[4] Put another way, with the exception of Dr. Lucas's October 2018 opinion (*id.*, PageID.72, 1508-1511), *the ALJ does not appear to expressly discuss <u>any</u> records dated September 2017 through March 2019. (See* ECF No. 12, PageID.1314-1315, 1396-1492, 1501-1507, 1512-1514, 1580-1621, 1742-1756, 1759-1760, 1762-1789.) This conclusion is buttressed by the ALJ's citations to medical record exhibits that the Court Transcript Index identifies as containing items post-dating August 31, 2017. (ECF No. 12, PageID.41-43 [Exhibits 21F-28F].) For example, when the ALJ cited:

---

[4] Sensibly, the ALJ also considered Plaintiff's February 2018 disability report, May 2017 function report, and April 2019 administrative hearing testimony. (*Id.*)

    (a)    Exhibit 21F, she cited records dated June 2016 to March 2017 (ECF No. 12, PageID.62-64, 1316-1323 [21F/3-10];

    (b)    Exhibit 22F, she cited records dated April 2017, May 2017 and August 2017 (*Id*., PageID.70-73, 1340-1345, 1395 [22F/13-18, 68]);

    (c)    Exhibit 24F, she only cited Dr. Lucas's October 17, 2018 MSS (*id*., PageID.72, 1508-1511 [24F/1-4]), *not the same-day treatment records* (*id*., PageID.1512-1514);

    (d)    Exhibit 25F, she cited records ranging from May 2017 to August 2017, excluding those from October 2017 forward (*id*., PageID.71, 1529-1578 [25F/15-64]; and,

    (e)    Exhibit 26F, she excluded records from September 2017 forward and only cited records through August 2017 (*id*., PageID.70, 1623-1740 [26F/1-117]).

And, the ALJ does not appear to have expressly cited Exhibits 23F, 27F, or 28F, each of which is described as containing records post-August 31, 2017. (ECF No. 12, PageID.43.) Therefore, it seems unlikely that the ALJ's use of August 31, 2017 was a typographical error; rather, it seems deliberate.

      Accordingly, on remand, the ALJ should either clarify the significance of that date and/or make clear that post-dated evidence was considered, with enough reference to these records for the Claimant and any subsequent appellate reviewer to understand the significance or insignificance attributed to them. It may be the case that further scrutiny of these post-August 31, 2017 records on remand will change the RFC or even the ultimate administrative decision. It may not. Either

way, even if Plaintiff's argument on this point was scant, and even if Plaintiff did not expressly point to post-August 31, 2017 records as to pain, the logical bridge necessary for this Court to affirm the ALJ is missing, the ALJ's reasoning and consideration of the post-August 31, 2017 evidence is unclear, and the due process afforded to Plaintiff is in doubt.

### F. Conclusion

Plaintiff has the burden of proof on her statement(s) of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  Although she has not shown reversible error in the ALJ's Step 2 determination, she has satisfied her burden to challenge whether substantial evidence supports the ALJ's review of the evidence post-August 31, 2017, if not also whether substantial evidence supports the lifting restrictions.  Accordingly, for the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT IN PART and DENY IN PART** Plaintiff's motion for summary judgment (ECF No. 15), **GRANT IN PART and DENY IN PART** Defendant's motion for summary judgment (ECF No. 16), and **REMAND** this matter to the Commissioner for action consistent with this report.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must precisely recite the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

22

Dated:  February 20, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE